UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KENNETH LEE CRONK,<br><br>                  Plaintiff,<br><br>      v.<br><br>CITY OF WEST RICHLAND, et al.,<br><br>                Defendants. | No.  4:14-CV-5041-EFS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION TO EXCLUDE EXPERTS** |

Plaintiff, Mr. Kenneth Cronk, is suing the City of West Richland, and many of its governing officers, for alleged civil rights violations resulting from the issuance of two separate notices of trespass by the city barring him from coming on city property. ECF No. 1. He claims these actions violated his rights under the First and Fourteenth Amendment and is seeking damages under 42 U.S.C. § 1983. He also claims that certain city officials conspired to deprive him of these rights in violation of 42 U.S.C. § 1985. Finally, he claims that the city itself is liable under a *Monell* theory of liability. Defendants respond that Mr. Cronk was given the notices of trespass after he was routinely disruptive at city council meetings and made "threatening statements" to a government staffer. *See* ECF No. 55. They claim that this was a reasonable restriction that did not deprive Mr. Cronk of his rights. *Id.* They also claim that they are protected by

ORDER - 1

1  qualified immunity. Defendants have moved for summary judgment and for

2  exclusion of Plaintiff's experts.

3                      I.    FACTUAL HISTORY

4       Mr. Cronk has been a citizen of West Richland for over thirty

5  years and was a regular attendee of the West Richland city council

6  meetings. ECF No. 73 at 2. By his own admission, Mr. Cronk attended

7  eleven city council meetings between April 2008 and November 2013. *Id.*

8  At each of these meetings, Mr. Cronk spoke during the public comment

9  period. *See id.* at 3-5. His complaints, however, were always the same.

10      According to Mr. Cronk, in 2006 and 2007, a series of incidents

11 occurred at his home involving his son, a "mentally disabled third

12 party," and Mr. Cronk's wife that resulted in the hospitalization of

13 Ms. Cronk and criminal citations being issued to Mr. Cronk's wife and

14 son. *See* ECF Nos. 56 & 73. Mr. Cronk believes that the police

15 investigation was improper and insufficient. *Id.* The Chief of Police

16 for the City of West Richland, Brian McElroy, met with Mr. Cronk and

17 personally looked into the matter. ECF No. 58 at 4. Reportedly, Chief

18 McElroy concluded there was nothing to be done. *Id.* As a result, Mr.

19 Cronk began protesting this "inept" police work both in public and at

20 the city council meetings he attended. ECF Nos. 56 & 73. Every time

21 that Mr. Cronk attended the city council meetings, he would air these

22 same grievances. ECF No. 66 at 3. The city claims that this repeated

23 use of the public comment period for personal grievances was a

24 disruption of the city council proceedings. *Id.* at 4. Generally,

25 however, the record indicates that the city councilors were willing to

26

ORDER - 2

1    let Mr. Cronk air his claims but repeatedly told him that nothing more
2    could be done. *See* ECF No. 56 at 7.

3         On June 19, 2012, the City of West Richland issued a notice of
4    trespass to Mr. Cronk informing him that he was "not to enter or
5    remain at the properties located at 3801 West Van Giesen, West
6    Richland, WA 99353." ECF No. 51, Ex. A. The notice explained that if
7    he did enter he would be subject to arrest and criminal prosecution
8    for trespass. *Id.* In this notice, there was no procedure by which Mr.
9    Cronk could enter city hall to conduct business with the city nor by
10   which he could challenge the notice. *See id.* The property at 3801 West
11   Van Giesen was home to West Richland City Hall and Public Works
12   Department. ECF No. 56 at 16. This notice was issued by Mayor Donna
13   Noski after she had conversations about Mr. Cronk with Police Chief
14   Brian McElroy and City Attorney Bronson Brown.

15        During June or July of 2012, Mr. Cronk would routinely deliver
16   documents relating to a pending lawsuit against the City to West
17   Richland city hall. ECF No. 67 at 4. On one occasion during that time
18   period, Mr. Cronk delivered documents to Ms. Richardson the West
19   Richland City Clerk. Ms. Richardson alleges that during their
20   conversation, Mr. Cronk said something to the effect that he "had to
21   take medications so that he doesn't think about shooting people." ECF
22   No. 67 at 4. Ms. Richardson reported this statement to her superiors.
23   *Id.* at 5. Mr. Cronk denies the allegation. ECF No. 78-1 ¶¶ 37-38
24   (denying generally that he ever threatened anyone but not denying that
25   he made the specific statement). He claims that he has never
26   threatened any governmental employee. *Id.* He claims that he merely

ORDER - 3

stated his displeasure and that he "had the right to 'sue' each of the departments or agencies." *Id.* Ms. Richardson and others at the city believed that Mr. Cronk had been a Hanford patrol officer, that he is a veteran, and that he suffers from PTSD. ECF No. 56 at 9. These facts, combined with Mr. Cronk's statement and his repeated and fervent criticisms of the city, led Police Chief McElroy and Major Noski to believe that Mr. Cronk was a public safety concern.[1] *Id.* at 10-12.

On August 29, 2012, a second notice of trespass was issued to Mr. Cronk also banning him from 3803 W. Van Giesen Street, which is the public library. ECF Nos. 58-2 & 55 at 16. City council meetings were held at the public library. This notice was also modified to say that if Mr. Cronk needed to access city property or facilities, he should contact the Chief of Police's office and the Chief would help with whatever he needed.

On November 5, 2013, for the first time in over a year after the notice of trespass was issued, Mr. Cronk attended the city council meeting to inquire as to why he was sent the notices of trespass. ECF No. 73 at 8-9. The city council informed him that they would look into it and have an answer at their next meeting. At the next meeting on November 19, 2013, Mr. Cronk again raised the issue. *Id.* The council referred him to the Chief of Police. *Id.* Mr. Cronk was not asked to leave either of these city council meetings. However, after the second

---

[1] Defendants dispute this chronology of events. Defendants claim the threatening statement was made prior to issuing the first notice of trespass on June 19, 2012. The only lawsuit the Court is aware of, however, is *Cronk v. City of West Richland,* 12-CV-5094-TOR, which was filed on July 18, 2012. There may have been a different lawsuit pending in some other court but there are no facts to support that inference.

meeting, Chief McElroy wrote to Mr. Cronk and reiterated that Mr. Cronk was allowed to go to the council meetings but needed to contact the Chief before he did so. ECF Nos. 56 at 21 & 58-3.

## II. DISCUSSION

Mr. Cronk has now sued the City of West Richland claiming that the notices of trespass are a violation of his First and Fourteenth Amendment rights and is suing for damages under 42 U.S.C. § 1983. He further claims a conspiracy by government officials to deprive him of said rights under 42 U.S.C. § 1985. Finally, he claims the City of West Richland is liable under a *Monell* theory of liability. The original complaint also included a number of state law claims but those were previously dismissed via summary judgment. Now, Defendants move for summary judgment on Mr. Cronk's remaining federal claims. They claim that they are protected by qualified immunity and that they did not violate Mr. Cronk's rights.

Summary judgment is appropriate if the record establishes "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party opposing summary judgment must point to specific facts establishing a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).  If the non-moving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary-judgment motion. *Celotex Corp.*, 477 U.S. at 322. The Court

1  must view the facts in light most favorable to the non-moving party.
2  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

3      A. Qualified Immunity

4  The Court must begin by addressing Defendants' claim of qualified
5  immunity. "The doctrine of qualified immunity protects government
6  officials from liability for civil damages insofar as their conduct
7  does not violate clearly established statutory or constitutional
8  rights of which a reasonable person would have known." *Pearson v.*
9  *Callahan,* 555 U.S. 223, 231 (2009) (internal quotations omitted).
10  Qualified immunity is an "immunity from suit rather than a mere
11  defense to liability." *Id.* Therefore, the Court must resolve the issue
12  of qualified immunity "at the earliest possible stage in litigation."
13  *Id.* To overcome a qualified immunity defense, the Plaintiff must show
14  that the Defendants "violated his [] rights, and that this violation
15  was of a clearly established statutory or constitutional right of
16  which a reasonable person would have known." *Reza v. Pearce*, No. 13-
17  15154, 2015 WL 4899122, at *4 (9th Cir. Aug. 18, 2015). For the
18  reasons set forth below, the Court finds that there are several
19  genuine disputes as to material facts. Taking those facts in the light
20  most favorable to Mr. Cronk, a reasonable jury could find that
21  Defendants' actions violated Mr. Cronk's clearly established First and
22  Fourteenth Amendment rights and, therefore, Defendants are not
23  protected by qualified immunity.

24      B. First Amendment Violation; 42 U.S.C. § 1983

25      Mr. Cronk claims that the notices of trespass, barring him from
26  city property, violated his First Amendment rights. In determining

ORDER – 6

whether Defendants' actions violated Mr. Cronk's First Amendment rights, we must begin by determining from what type of forum was Mr. Cronk banned. *See Reza*, __ *F.3d* at *4. Federal courts generally recognize three types of public fora: (1) traditional public fora; (2) designated public fora; and (3) limited public fora. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 44 (1983). Traditional public fora are areas historically used by the public for assembly, such as sidewalks and parks. *Id.* Designated public fora are those where "the government intentionally opens a nontraditional forum for public discourse." *Reza*, __ F.3d at *4 (quoting *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.,* 196 F.3d 958, 964 (9th Cir. 1999). Limited public fora are public property "limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Pleasant Grove City, Utah v. Summum,* 555 U.S. 460, 470 (2010). The Ninth Circuit Court of Appeals has held "that city council meetings, where the public has the opportunity to address officers of a local government or local governmental agency," like the one Mr. Cronk was barred from attending, "are limited public fora." *Reza*, __ F.3d at *4.

"[I]n order to safeguard the purpose of a limited public forum, the government may restrict speech in that forum." *Reza*, __ F.3d at *4 (quoting *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990). "In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n,* 460 U.S. at 46.

1    According to the record before the Court, the restrictions

2  imposed on Mr. Cronk were viewpoint neutral. All of the declarations,

3  affidavits, and other evidence submitted to the Court support the fact

4  that Mayor Noski, Chief McElroy, and Mr. Brown, trespassed Mr. Cronk

5  because he was disruptive and made threatening statements and not

6  because of what he was saying. But even viewpoint neutral restrictions

7  must be reasonable. *See Reza*, __ F.3d at *4. On this record, the Court

8  finds several material issues as to disputed facts that control

9  whether or not the city's restrictions were reasonable.

10    First, it is unclear how disruptive Mr. Cronk truly was during

11  the city council meetings. The Mayor, the Chief of Police, the City

12  Attorney, and all of the city councilors each submitted declarations

13  to the Court discussing how disruptive Mr. Cronk was. *See* ECF Nos. 57-

14  66. However, by the Defendants' own factual assertions, Mr. Cronk was

15  never violent or threatening during city council meetings, nor did he

16  engage in any minor disruptions such as speaking past the time limit.

17  The most he did, according to Defendants, was that he spoke off topic.

18  ECF No. 56 at 6-7. Each time Mr. Cronk spoke, the city simply told him

19  that they had already looked into the issue and that there was nothing

20  to be done. *Id.* This would end the "disruption." *See Id.*

21    Additionally, it is disputed whether or not Mr. Cronk made any

22  threatening statements to city hall staff. Ms. Julie Richardson claims

23  that Mr. Cronk "made a comment to the effect that he 'had to take

24  medications so that he doesn't think about shooting people.'" ECF No.

25  67 at 4. She is the only person who claims to have ever heard any

26  threatening statements made by Mr. Cronk. Mr. Cronk, however,

1   generally denies having ever threatened any government employee. *See*

2   ECF No. 78-1 at ¶¶ 37-38. He does not, however, specifically deny

3   making the specific statement to Ms. Richardson.

4        Finally, as indicated above, there are even disputes as to the

5   basic chronology of events. Mr. Cronk asserts that the first notice of

6   trespass was issued prior to the time when the city claims that Mr.

7   Cronk made his threatening statement and claims that he did not

8   violate the protective order until he went to the city council meeting

9   in November 2013. But Mr. Cronk contradicts himself when he admits

10  that he delivered documents to the clerk in July 2012. The city also

11  contradicts itself when it claims that the June 19, 2012 notice of

12  trespass was not sent out until after Mr. Cronk made threatening

13  statements while delivering documents relating to Mr. Cronk's "pending

14  lawsuit" against the city. The only suit the Court is aware of is the

15  one filed in this Court on July 18, 2012. On the record before the

16  Court, there is a genuine issue of material fact as to whether the

17  first notice of trespass was in response to the alleged threat.

18       Therefore, the Court denies Defendants' Motion for Summary

19  Judgment as to the First Amendment violations.

20   C. Fourteenth Amendment Violation; 42 U.S.C. § 1983

21       Mr. Cronk also claims that the city violated his procedural due

22  process rights, under Fourteenth Amendment, when it banned him from

23  city property.[2] The Fourteenth Amendment states, ". . . nor shall any

24  state deprive any person of life, liberty, or property, without due

---

25  [2] Mr. Cronk did not respond to Defendants' motion for summary judgment
26  regarding the Fourteenth Amendment in his briefing. However, it was raised in
    oral argument and discussed at length. Therefore, the Court finds it
    appropriate to decide the matter on its merits.

process of law." "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). The Supreme Court has not attempted to define "liberty" under the Fourteenth Amendment, but

> [w]ithout doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized as essential to the orderly pursuit of happiness by free men.

*Id.*

When a person is deprived of a significant interest, absent extraordinary circumstances where government interests justify waiting until after the deprivation, "the right to some kind of prior hearing is paramount." *Id. See also, Boddie v. Connecticut*, 401 U.S. 371, 378 (1971).

Here, Mr. Cronk claims that he was deprived of his First Amendment right of free speech and right to petition the government when he was banned from city property. He also claims that he was not given notice and an opportunity to be heard either before or after the notice was sent. Again, how the factual discrepancies highlighted above are resolved will inform what process Mr. Cronk should have been afforded. If it is found that Mr. Cronk was a legitimate safety concern, then a hearing after the deprivation may have been appropriate. What is clear, however, is that some procedure was due to

Mr. Cronk and, based solely on the text of the notices, Mr. Cronk was given none. Neither notice of trespass afforded him an opportunity to challenge the deprivation. *See* ECF Nos. 57-1 & 57-3. The first notice was a complete, total, and unending bar from city property. ECF No. 51-1.

For these reasons, the Court denies the Defendants' Motion for Summary Judgment as to the Fourteenth Amendment claim.

D. <u>Conspiracy Claim; 42 U.S.C. § 1985</u>

The Defendants also move to dismiss the conspiracy claim arguing a lack of evidence. "A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Vieux v. E. Bay Reg'l Park Dist.,* 906 F.2d 1330, 1343 (9th Cir.1990) (citation and internal quotation marks omitted). To prove a civil conspiracy, the plaintiff must show that the conspiring parties "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Id.* (citation and internal quotation marks omitted). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir.1989) (en banc). A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions. *See United States v. Calabrese,* 825 F.2d 1342, 1348 (9th Cir. 1987) (involving a criminal conspiracy).

1    Here, the Defendants argue that there is insufficient evidence

2    to find that a conspiracy to deny Mr. Cronk of his civil rights

3    occurred. ECF No. 55 at 16. Their claim rests largely on the argument

4    that there was no constitutional violation to begin with and,

5    therefore, there could be no conspiracy. As discussed above, there are

6    disputed material facts which could lead a jury to find that Mr.

7    Cronk's rights were, in fact, violated. Additionally, the Defendants'

8    declarations repeatedly reflect conversations between the Mayor, the

9    Chief of Police, and the City Attorney about a course of action

10   regarding Mr. Cronk. There were many letters and admissions that

11   support the fact that the three of them agreed that Mr. Cronk should

12   be trespassed. If it is determined that Mr. Cronk's rights were

13   violated when they trespassed him, there is circumstantial evidence

14   that might support a finding that they conspired to do so.

15   During oral arguments, the parties stipulated to the fact that

16   there was no evidence in the record to show that that the city council

17   members were involved in any alleged conspiracy. Therefore, the

18   parties agreed to the dismissal of the conspiracy claims as to the

19   city council members.

20   For the reasons stated above, the Court grants Defendants'

21   Motion for Summary Judgement as to the conspiracy claims only as

22   alleged against city council members. The Court denies Defendants'

23   Motion for Summary Judgment as to the Conspiracy claims alleged

24   against Mayor Donna Noski, Chief Brian McElroy, and Mr. Bronson Brown.

25   //

26   //

ORDER - 12

E. *Monell* Liability

Mr. Cronk alleges that the City of Richland is also liable under a *Monell* theory of liability. Defendants have moved for summary judgment arguing Mr. Cronk has provided no evidence to show that there is a policy or custom of trespassing citizens.

Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978),

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Defendants are correct in that Mr. Cronk has shown no other incidents where similar alleged violations have occurred. However, this is not the only manner by which a municipality may be found liable under *Monell*.

"[A] local government may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority . . ." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010) (quoting *Gillette v. Delmore,* 979 F.2d 1342, 1346–47 (9th Cir. 1992)). "There must . . . be evidence of a conscious, affirmative choice." *Gillette*, 979 F.2d at 1347. Liability "attaches only where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.*

ORDER - 13

Here, the Mayor of the City of West Richland signed the two notices of trespass against Mr. Cronk. During oral argument, Additionally, by her own admissions, she chose the notice of trespass over various alternatives. ECF No. 66 at 5-6 ("I discussed possible options . . . . the Chief conveyed several possible options to me . . . . This option was selected because it seemed to be the least intrusive on Mr. Cronk.").

The Court makes no finding as to whether Mr. Cronk's rights were violated. But what is undisputed is that the actions taken by the city were taken by Mayor Noski, that she was the final policy making authority on the subject, and that she weighed several options before making her decision. As a result, if it is determined that Mr. Cronk's rights were violated, the city could be held liable under a *Monell* theory of liability.

F. <u>The City Council Members' Liability</u>

In his complaint, Mr. Cronk alleges all of the above discussed claims against the city council members in their personal capacity. However, no evidence has been provided to show that any of them were involved in the decision to trespass Mr. Cronk. All that is shown is that the city council members were informed of the decision after it was made by the mayor.

"In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation . . ." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). *See also, Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983

arises only upon a showing of personal participation by the defendant."). A defendant may also be liable if he or she is a supervisor "knew of the violations [by the employee] and failed to act to prevent them." *Taylor*, 880 F.2d at 1045.

Here, no evidence has been offered to show that the city council members participated in any of the violations alleged by Mr. Cronk. There is also no evidence to show that any of the council members knew that the notices of trespass were being sent. The only evidence in the record shows that the council members were told of the notices after they had been sent. In any event, it is unclear whether the city council would be the "supervisor" of the Mayor with the power to override her authority. However, Plaintiff's counsel agreed that Mayor Noski was the final policy making authority, subjecting the city to liability, and that the city council was the legislative authority. Unless the city council was the considered the final policy maker, the Court cannot impose liability under §1983 for its inaction. Plaintiff cites no authority to support that proposition.

Therefore, the Court grants Defendants' Motion for Summary Judgement as to the city council members and dismisses them from this action.

G. <u>Motion to Exclude Experts</u>

Defendants have also moved to exclude expert testimony offered by Mr. Cronk. ECF No. 68. Mr. Cronk, in both oral argument and in briefing, conceded the motion and informed the Court that he does not intend to offer any expert witnesses. The Court, therefore, grants the Defendants' Motion to Exclude Experts, ECF No. 68.

H. <u>Mediation</u>

The Court believes that the parties would benefit greatly from mediation and orders mediation at a time mutually convenient for Magistrate Hutton and the parties. Magistrate Judge Hutton will issue a separate order outlining the date (likely late October or early November), requirements, and procedures for the settlement conference.

Accordingly, **IT IS HEREBY ORDERED:**

1.    Defendants' Motion for Summary Judgment, **ECF No. 55**, as to the city council members is **GRANTED**. Defendants Tony Benegas, Richard Bloom, Gail Brown, Brent Gerry, Ron Hayden, and Robert Perkes are dismissed from this action.

2.    Defendants' Motion for Summary Judgment, **ECF No. 55**, as to Donna Noski, Brian McElroy, Bronson Brown, and the City of West Richland is **DENIED**. All claims remain against these Defendants.

3.    Defendants' Motion to Exclude Experts, **ECF No. 68**, is **GRANTED**.

4.    The Parties are ordered to participate in a settlement conference before Magistrate Judge Hutton.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel and Magistrate Judge Hutton.

**DATED** this <u>10th</u> day of September 2015.


                    s/Edward F. Shea
    _____
                    EDWARD F. SHEA
          Senior United States District Judge