UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KENNETH CRONK,

             Plaintiff,

      v.

CITY OF WEST RICHLAND, et al.,

             Defendants.

CASE No.   4:14-CV-5041-EFS

---

PRELIMINARY INSTRUCTIONS GIVEN BY THE COURT

---

DATED this 18ᵗʰ  day of July 2016.


_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge

Preliminary Jury Instructions - 1

PRELIMINARY INSTRUCTION NO. 1


Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

Preliminary Jury Instructions - 2

1                       PRELIMINARY INSTRUCTION NO. 2

2

3        To help you follow the evidence, I will give you a brief summary

4   of the positions of the parties:

5        The Plaintiff Kenneth Cronk claims that Donna Noski, Bronson

6   Brown, and Brian McElroy violated his First Amendment rights when they

7   issued a notice of trespass, which barred him from entering City of

8   West Richland Property. Plaintiff also claims that Donna Noski,

9   Bronson Brown, and Brian McElroy conspired to deprive him of his First

10  Amendment rights. Finally, Plaintiff claims that the City of West

11  Richland is liable as a result of the alleged deprivation of his First

12  Amendment rights.

13       The Defendants deny these claims.

14

15

16

17

18

19

20

21

22

23

24

25

26

Preliminary Jury Instructions - 3

PRELIMINARY INSTRUCTION NO. 3


When a party has the burden of proof on a claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Preliminary Jury Instructions - 4

PRELIMINARY INSTRUCTION NO. 4

You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all parties.

Preliminary Jury Instructions - 5

PRELIMINARY INSTRUCTION NO. 5

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I may instruct you to accept as proved.

PRELIMINARY INSTRUCTION NO. 6

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4. Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Preliminary Jury Instructions - 7

PRELIMINARY INSTRUCTION NO. 7

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

PRELIMINARY INSTRUCTION NO. 8

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

PRELIMINARY INSTRUCTION NO. 9

The parties have agreed to certain facts that will be read to you. You must therefore treat these facts as having been proved.

Those facts are attached to these instructions as Court's Exhibit 1.

Preliminary Jury Instructions - 10

PRELIMINARY INSTRUCTION NO. 10

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

PRELIMINARY INSTRUCTION NO. 11

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness's memory;

3. the witness's manner while testifying;

4. the witness's interest in the outcome of the case, if any;

5. the witness's bias or prejudice, if any;

6. whether other evidence contradicted the witness's testimony;

7. the reasonableness of the witness's testimony in light of all the evidence; and

8. any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe

Preliminary Jury Instructions - 12

anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

Preliminary Jury Instructions - 13

PRELIMINARY INSTRUCTION NO. 12


I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

PRELIMINARY INSTRUCTION NO. 13


If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the jury room. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

PRELIMINARY INSTRUCTION NO. 14

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness. You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness.  If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a form provided by the Court.  Do not sign the question.  I will review the question with the lawyers to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror.  This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case.  If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons.  Do not give undue weight to questions you or other jurors propose.  You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so.  It will often be the case that a party has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

Preliminary Jury Instructions - 16

PRELIMINARY INSTRUCTION NO. 15

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error. Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

PRELIMINARY INSTRUCTION NO. 16

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or other social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

1    Because you will receive all the evidence and legal instruction
2    you properly may consider to return a verdict: do not read, watch or
3    listen to any news or media accounts or commentary about the case or
4    anything to do with it; do not do any research, such as consulting
5    dictionaries, searching the Internet or using other reference
6    materials; and do not make any investigation or in any other way try
7    to learn about the case on your own.

8        The law requires these restrictions to ensure the parties have a
9    fair trial based on the same evidence that each party has had an
10   opportunity to address. A juror who violates these restrictions
11   jeopardizes the fairness of these proceedings, and a mistrial could
12   result that would require the entire trial process to start over. If
13   any juror is exposed to any outside information, please notify the
14   court immediately.

15

16

17

18

19

20

21

22

23

24

25

26

PRELIMINARY INSTRUCTION NO. 17

Trials proceed in the following way:

First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

Preliminary Jury Instructions - 20

COURT'S EXHIBIT 1

1) The City of West Richland has adopted the classification of a noncharter code city.

2) The City operates under the mayor council plan of government as set forth in Chapter 35A.12 RCW, endowed with all of the applicable, rights, powers, privileges, duties and obligations of non-charter code cities as set forth in Title 35A as the same now exists, including, but not by way of limitation, those set forth in Chapter 35A.11 RCW, and further including any and all supplements, amendments or other modifications of RCW Title 35A which may be enacted.

3) The Mayor-Council form of government includes an elected mayor, who serves as the City's chief administrative officer, and a council elected at large or from districts, which serves as the municipality's legislative body.

4) Mayor Donna Noski signed the "Notice of Trespass" dated June 19, 2012.

5) Mayor Donna Noski signed the "Notice of Trespass" dated August 29, 2012.

6) Donna Noski, Bronson Brown and Brian McElroy knew that Mr. Cronk's lawsuit against the City was pending prior to the preparation of the August 29, 2012, "Notice of Trespass".

7) At Mr. Cronk's request, Police Chief Brian McElroy personally served Mr. Cronk with the Notice of Trespass dated August 29, 2012 at the Federal Building and Court House in Richland, Washington on August 30, 2012.

Preliminary Jury Instructions - 21

8) On June 5, 2012, the City of West Richland passed Resolution 15-12.

9) Resolution 15-12, amongst other things, set forth City Council Rules of Procedure and Conduct wherein, audience conduct at city council meetings was addressed.

10) Under Resolution 15-12: "No audience member shall disrupt the conduct of the meeting or clap, cheer, hoot, holler, gesture, whistle, guffaw, jeer, boo, hiss make remark out of turn, use profanity, or the like. Any audience member who does so shall be determined out of order and the Presiding Officer may have such person removed from the Council Chambers immediately. Such person shall not be permitted to attend the remainder of that Council meeting."

11) The City also set forth their procedure for dealing with City Council meeting interruptions that adversely affect the Council's ability to conduct a meeting in an orderly fashion allowing individuals to be removed from the meeting.

12) Mr. Cronk personally attended the following City of West Richland City Council Meetings: 04/07/ 2008, 02/17/2009, 04/20/2009, 01/04/2010, 05/03/2010, 08/16/2010, 10/04/2010, 02/07/2012, 04/03/2012, 11/05/2013, 11/19/2013.

13) Mr. Cronk has resided with his family in the City of West Richland in excess of thirty years.

14) City of West Richland City Council meetings are broadcast live by way of cable television but are not video recorded or taped.

15) Each of the named defendants at all times acted under the color of law.

Preliminary Jury Instructions - 22

16) During the time he has resided in West Richland, Mr. Cronk has attended 11 City of West Richland city council meetings and participated in the respective "public comment' period.

17) Neither of the issued Notices of Trespass were posted for public viewing prior to their service upon Mr. Cronk.

18) There is no audible evidence of the removal of Mr. Cronk from any city council meeting for noncompliance with Resolution 15-12.

19) The City of West Richland's City Hall and Public Works Department is located at located at 3801 W. Van Giesen, West Richland, Washington.

20) The City of West Richland's City Library and venue for City Council Meetings is located at 3803 W. Van Giesen, West Richland, Washington.

21) Mr. Cronk has over twenty five years of law enforcement experience including his military service in the Army Military Police.

22) As of this date, Mr. Cronk has resided with his family in the City of West Richland in excess of thirty years.

23) Mr. Cronk admittedly suffers from a cognitive disability that impedes his ability to write and sometimes under stress he has difficulty verbalizing/articulating and organizing his intended thoughts.

24) Mayor Noski at various city council meetings including May 3, 2010 told Mr. Cronk that the City had investigated all matters and determined that there was nothing the City could do.

25) At the city council meeting on November 5, 2013, Mr. Cronk asked Mayor Donna Noski if the City Council had knowledge of the No Trespass

Preliminary Jury Instructions - 23

document and she told him that they did. Mr. Cronk also asked if they would rescind or retract the Notice. She told him that she would get back to Mr. Cronk at the next city council meeting.

26) On November 19, 2013, Mr. Cronk attended the City of West Richland's City Council Meeting. During the "Private Citizen Comment" period he asked the Mayor if they had an answer for him concerning the rescission or removal of the Notices of Trespass. The Mayor deferred the query to the Chief of Police. The Chief of Police further deferred a decision to the new Mayor who would not assume his or her newly elected position until 2014.

27) Julie Richardson is the City Clerk for the City of West Richland, Washington and has been since August 2005.

28) Donna Noski was the Mayor of the City from January 1, 2010 through December 31, 2013 and prior to that she had served as Interim City Administrator for the City.

29) At the time of the events alleged in the Complaint Tony Benegas was a Councilperson for the City and had been since January, 2008.

30) At the time of the events alleged in the Complaint Richard Bloom was a Councilperson for the City and had been since January, 2010.

31) At the time of the events alleged in the Complaint Gail Brown was a Councilperson for the City and had been since January, 1998.

32) At the time of the events alleged in the Complaint Rich Buel was a Councilperson for the City and had been since January, 2002.

33) Brent Gerry is presently the Mayor of the City and has been since January, 2014. Prior to that he was a Councilperson for the City from January, 2010 to December, 2013.

Preliminary Jury Instructions - 24

34) At the time of the events alleged in the Complaint Ron Hayden was a Councilperson for the City and had been since January, 2012.

35) At the time of the events alleged in the Complaint Robert Perkes was a Councilperson for the City and had been since January, 2012.

36) Brian McElroy has been the Chief of Police for the City since June 15, 2010. Prior to that he had been employed by the City of Ellensburg since 1990 as a patrolman and Sergeant in its police department.

37) Bronson Brown is an attorney licensed to practice in Washington. He was admitted to the Washington State Bar in 2003 and has been in good standing since his admission.

38) Mr. Brown has been the City Attorney for the City since April, 2009.

39) Since becoming City Attorney for the City Mr. Brown has become familiar with Mr. Cronk.

40) In her capacity as City Clerk one of Ms. Richardson's responsibilities is to disseminate information to the City Council, Mayor and Department Heads as it is received by the City.

41) This includes correspondence, documents and other information the City receives from citizens of West Richland.

42) During the time she has been City Clerk for the City Ms. Richardson has received numerous documents from the plaintiff Kenneth Cronk addressed to the Mayor of West Richland, the West Richland City Council and/or the Chief of Police.

43) Ms. Richardson has also received copies of documents authored by Mr. Cronk which were directed to other entities or individuals but copied to the City.

Preliminary Jury Instructions - 25

44) Ms. Richardson timely forwarded these documents to the appropriate individuals or departments at the City as they came in.

45) Given the nature and substance of the documents, Ms. Richardson also typically forwarded the documents to the Attorney for the City.

46) As Mayor it was Ms. Noski's responsibility to ensure that Council meetings ran smoothly and that time was managed appropriately.

47) On June 8, 2012, the West Richland Police Department was contacted by Mary Jo Byers at the Washington Department of Social and Health Services Division of Developmental Disabilities.

48) Ms. Byers reported that Hailey Thoelke, a DSHS employee, was on the phone with Mr. Cronk.

49) During this telephone call, Mr. Cronk complained about government agencies wronging him and his family, including DSHS, Benton County courts, the West Richland Police Department, the State Attorney General's office, and city attorneys.

50) West Richland Police Officer Terry Boehmler was dispatched to Mr. Cronk's home, where he was assisted by Officer Douglas Doshier.

51) Ms. Thoelke remained on the line with Mr. Cronk while Officer Boehmler traveled to Mr. Cronk's home.

52) Mr. Cronk was then transported to Kadlec Regional Medical Center for a mental health evaluation.

53) Since the Chief of Police is the individual with the most experience at the City on public safety issues, Mayor Noski believed it made sense for him to coordinate with the City's legal counsel on how best to handle the situation.

54) A Notice of Trespass dated June 19, 2012 was delivered to Mr. Cronk's home and left with his wife on that same date.

55) The issue of Mr. Cronk being trespassed was not brought before the Council for a vote.

56) The address 3801 West Van Giesen encompasses the City Hall and Public Works buildings on the City campus, but it does not encompass the West Richland Police Department which is housed at 3805 West Van Giesen or the West Richland Public Library which is housed at 3803 West Van Giesen.

57) City Council meetings are generally held in the West Richland Public Library building which is located at 3803 West Van Giesen.

58) In 2012 Mr. Cronk sued the City of West Richland.

59) Ms. Richardson was called to assist Mr. Cronk at the utility counter as he had something he needed to deliver to the City.

60) In all of her dealings with Mr. Cronk prior, Mr. Cronk had never said anything like this to Ms. Richardson before.

61) It is the Chief of Police's responsibility to ensure the safety of the employees and citizens of the City of West Richland.

62) Chief McElroy knew that Mr. Cronk had been on Hanford patrol for many years prior and in that capacity he was familiar with and carried firearms. Chief McElroy also knew that Mr. Cronk is a veteran.

63) City Attorney Brown discussed possible options with Chief McElroy.

64) These options included, but where not limited to, issuing a criminal citation to Mr. Cronk, pursuing a restraining order or trespassing Mr. Cronk from City property.

Preliminary Jury Instructions - 27

65) After Chief McElroy consulted with City Attorney Brown, the Chief conveyed several possible options to Mayor Noski and they discussed the risks and benefits of each option.

66) He was not asked to leave and in fact he spoke at the meetings in 2013.

67) Mr. Cronk was not arrested after either of the meetings in 2013.

68) Mr. Cronk never responded to Chief McElroy's letter dated December 2013 and he has had no further contact with Chief McElroy for purposes of coordinating his attendance at any City Council meeting or to attend to City business.

69) All City of West Richland Council meetings are televised live on public access cable television.

70) There is also an audio recording of Council meetings made and posted on the City's website following such meetings.

71) The agendas for West Richland Council meetings are typically posted on the City's website and at City Hall at least 5 days prior to City Council meetings.

72) The minutes from West Richland City Council meetings are typically prepared and presented to the City Council for approval at the subsequent Council meeting. The approved minutes are then posted on the City's website within a few days of the meeting wherein they are approved.

73) The City of West Richland allows citizens to pay any bills owing to the City via the City's website so that it is not necessary to actually come to the City campus for that purpose. City bills also can

1    be, and usually are by the majority of citizens, paid by mail, instead

2    of in person.

Preliminary Jury Instructions - 29